HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY GRIEFF,

                Plaintiff,

    v.

BRIGANDI COIN CO.,

                Defendant.

CASE NO. C14-214 RAJ

ORDER

This matter comes before the court on plaintiff's motion to remand.  Dkt. # 10.
Removal is proper where the district court would have original jurisdiction over the state
court action.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction over civil
actions where the amount in controversy exceeds $75,000, exclusive of interests and
costs, and the case is between citizens of different states.  28 U.S.C. § 1332.  Plaintiff
seeks remand on the basis that the amount-in-controversy is not satisfied.

There is a strong presumption against removal jurisdiction.  *Gaus v. Miles, Inc.*,
980 F.2d 564, 566 (9th Cir. 1992).  To protect the jurisdiction of state courts, removal
jurisdiction is strictly construed in favor of remand, and any doubt as to the right of
removal must be resolved in favor of remand.  *Harris v. Bankers Life and Cas. Co.*, 425

1   F.3d 689, 698 (9th Cir. 2005); *Gaus,* 980 F.2d at 566.  The party seeking a federal forum

2   has the burden of establishing that federal jurisdiction is proper.  *Abrego Abrego v. Dow*

3   *Chem. Co.,* 443 F.3d 676, 682-83 (9th Cir. 2006).

4           Depending on the allegations of a plaintiff's complaint, different evidentiary

5   standards apply to a motion to remand that challenges the amount in controversy.  Where

6   the complaint explicitly states damages that exceed $75,000, the court presumes that it

7   has jurisdiction "unless it appears to a legal certainty that the plaintiff cannot actually

8   recover that amount."  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir.

9   2007) (internal quotation omitted).  Where the complaint expressly states damages that

10  are less than $75,000, the party advocating for removal must prove to a legal certainty

11  that the damages exceed the jurisdictional minimum.  *Id.*  If the complaint is "unclear or

12  ambiguous" as to the amount in controversy, the removing defendant must prove by a

13  preponderance of evidence that the amount in controversy is more than $75,000.  *Id.; see*

14  *also Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("[W]e expressly

15  contemplate the district court's consideration of some evidentiary record."); *Matheson v.*

16  *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (endorsing

17  consideration of "facts presented in the removal petition as well as any summary-

18  judgment-type evidence relevant to the amount in controversy at the time of removal")

19  (internal quotation omitted).

20          Importantly, the amount in controversy is established at the time of removal.[1]

21  *Matheson*, 319 F.3d at 1090.  The amount in controversy includes actual damages,

22

23  ─────────────────────

24          [1] The Ninth Circuit has not addressed whether the amount of a post-removal counterclaim
    can serve as a basis to satisfy the amount in controversy.  Based on the strong presumption

25  against removal jurisdiction, the court believes that the Ninth Circuit would find that, similar to
    federal question counterclaims, defendant cannot rely on the value of post-removal

26  counterclaims to establish the amount in controversy.  *See Matheson*, 319 F.3d at 1090 (courts
    may consider "any summary-judgment-type evidence relevant to the amount in controversy at

27  the time of removal.") (internal quotations omitted); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d

1  punitive damages, and attorney's fees authorized by contract or statute.[2]  *See Gibson v.*

2  *Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (punitive damages); *Kroske v. US*

3  *Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2006) (attorney's fees).

4  In the complaint, plaintiff seeks an award of compensation for the total purchase

5  price of $7,795 for a Nolan Ryan Jersey ($6,000), a George Brett baseball cap ($900),

6  and a Robin Yount baseball cap ($895), an award of accrued interest on the loss of use of

7  the purchase money, loss of market appreciation in the value, punitive damages and

8  attorney's fees.  Dkt. # 1-1 (Compl.) ¶¶ 12-15 & at 17:9-14.

9  With respect to the total purchase price, plaintiff contends that the total purchase

10  price for the Ryan Jersey, Brett cap and Yount cap is $ 7,795.  Dkt. # 1-1 ¶¶ 12-15, 89; #

11  11 (Grieff Decl.) ¶ 4.  However, there is also evidence that the Brett cap was sold

12  together with a Brett Jersey for $4,100, and the Yount cap was sold together with a Yount

13  jersey for $2,850.  Dkt. # 1-1 at 27 (Ex. 4 to Compl.); Dkt. # 21 (Brigandi Sr. Decl.) ¶¶ 8-

14  10.  Mr. Brigandi Sr. also states that the Brett cap and Yount cap were not sold

15  individually, and the price paid was solely for the pair.  Dkt. # 21 (Brigandi Sr. Decl.) ¶¶

16  8-10.  In July 2013, plaintiff returned the Yount and Brett caps, but there is no indication

17  that he returned the jerseys or that Brigandi demanded that the jerseys also be returned

18  since they were sold as a pair.  *Id.* ¶¶ 11-12.  Although defendant argues that the total

19  purchase price should include the combined cost of the Yount items for $2,850 and the

20  Brett items for $4,100, such a finding would render the value of the Yount and Brett

21  jerseys to zero.  Given the factual dispute over the value of the caps, the court finds that

22  defendant has not met its burden by a preponderance of the evidence to include the value

23

24

25  815, 821 (9th Cir. 1985) (removability cannot be created by defendant pleading a counterclaim

26  presenting a federal question).
   [2] The CPA authorizes recovery of reasonable attorney's fees to the prevailing party.

27  RCW 19.86.090.

ORDER- 3

of the jerseys in the total purchase price at this stage of the proceedings. Accordingly, the total purchase price, as alleged in the complaint is $7,795.

With respect to interest for the loss of use, plaintiff contends that a 12 percent rate since the date of purchase is appropriate, and defendant appears to agree, at least for purposes of its opposition, that a 12 percent rate over 14 years is appropriate. Dkt. # 11 (Grieff Decl.) ¶ 5; # 19 at 7-8. The court calculates plaintiff's loss of use at 12 percent over 14 years to total $13,095.60.

With respect to loss of appreciation, plaintiff contends that 20 percent is an appropriate rate, and defendant appears to agree, at least for purposes of its opposition. Dkt. # 11 (Grieff Decl.) ¶ 3; # 19 at 7. The court calculates loss of appreciation to total $1,559.

With respect to punitive damages, the Consumer Protection Act allows an award of treble damages for violations of the law, but these damages cannot exceed $25,000. RCW 19.86.090.

With respect to attorney's fees, defendant argues that plaintiff has already devoted substantial hours litigating this case, and speculates that plaintiff's counsel has devoted at least 50 hours to-date on various tasks, including drafting the complaint, motion to remand, opposition to transfer motion, motion for protective order, and notice of supplemental case authority. Dkt. # 19 at 12. Defendant also speculates that plaintiff's counsel's future tasks will likely result in at least 150 additional hours litigating the matter. Dkt. # 19 at 12-13. Plaintiff argues that only the amount of attorney's fees incurred as of the date of the notice of removal is relevant. Dkt. # 28 at 5.

The Ninth Circuit has not squarely addressed whether future attorney's fees should be included in calculating the amount in controversy, and district courts in the Ninth Circuit are split on this issue. *See Hernandez v. Towne Park, Ltd.*, Case No. C12-2972 MMM (JCGx), 2012 WL 2373372, *19 (C.D. Cal. June 22, 2012) (collecting cases); *Kahlo v. Bank of Am., N.A.*, Case No. C12-83RSM, 2012 WL 1067237, *3 (W.D. Wash.

1   March 28, 2012) ("Given that the amount of future attorneys' fees incurred after the date

2   of removal is entirely speculative and may even be avoided, the Court . . . rejects

3   defendants' inclusion of plaintiff's [future] attorney's fees as speculative and

4   unsupported, and finds they cannot be included in determining the amount in

5   controversy."); *Roe v. Teletech Customer Care Mgmt. (Colo.), LLC*, Case No. C07-

6   5149RBL, 2007 WL 1655172, *4 (W.D. Wash. June 6, 2007) ("it is the Court's view that

7   a reasonable, informed estimation of fees, based on the various tasks to be accomplished

8   by both sides, and the hourly rates of the attorneys who will conduct those tasks

9   (including future attorneys' fees), properly comprise the evidence that can and should be

10  considered in evaluating the amount in controversy for jurisdictional purposes.") (internal

11  citations and emphasis omitted).

12          Circuit courts are also split on whether future attorney's fees should be included in

13  calculating the amount in controversy.  The Fifth and Tenth Circuits have held that

14  reasonably recoverable future attorney's fees should be included in calculating the

15  amount in controversy.  *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720,

16  723-24 (5th Cir. 2002); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir.

17  1998).  In contrast, the Seventh Circuit has held that future attorney's fees are not

18  properly considered an amount "in controversy" when the suit arrives in federal court.

19  *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998).  In noting that

20  jurisdiction depends on the state of affairs when a case arrives in federal court, the

21  Seventh Circuit reasoned:

22          Recovery of less than $50,000[3] would not retroactively deprive the district
        court of jurisdiction; similarly, post-filing events that increase defendant's
23      outlay cannot create jurisdiction that was lacking at the outset. . . . It would
        be neither sensible nor consistent with *St. Paul Mercury* [*Indem. Co. v. Red
24      Cab Co.*, 303 U.S. 283 (1938)] to say that there was no federal jurisdiction
        on the date the complaint was filed, the trial held, or the judgment entered
25

26

27          3 The amount in controversy has since been changed to $75,000.

ORDER- 5

in the district court, but that the appeal enabled counsel to run up the tab and create a jurisdictional basis for further proceedings.  Unless the amount in controversy was present on the date the case began, the suit must be dismissed for want of jurisdiction."

*Id.* at 958.  The Seventh Circuit also noted the distinction between the likely course of litigation and the legal rights of the parties in reasoning that unlike future income lost to injury, legal fees are avoidable.  *Id.* at 958-59.

The court is persuaded by the reasoning in *Gardynski-Leschuck*.  Federal court jurisdiction is determined when a case first arrives in federal court, whether originally filed by a plaintiff, removed by defendant, or by some other method.  *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).  Generally, legal rights accrue, and damages are incurred, at the time the injury or harm occurs, or, in the case of future damages such as future lost income, the damages relate back to the same injury or harm.  Thus, damages, including future damages, provide a remedy for an injury suffered prior to the case arriving in federal court.  In contrast, legal fees accrue on an ongoing basis for work performed by counsel, and the amount is largely dependent on legal strategy and on events in the control of the client or counsel.  Legal fees may be avoided, such as by prompt settlement, or may accrue over years if a party takes an aggressive litigation strategy.  Thus, future legal fees are distinct from future damages since the amount of future legal fees are in the control of the client or counsel, and any amount of legal fees that might be awarded for a CPA violation would not provide a remedy for any injury suffered prior to arriving in federal court.  Since federal court jurisdiction is determined when a case first arrives in federal court and is not changed by subsequent events, the court believes that the Ninth Circuit would find that future attorney's fees not yet incurred are not an amount "'in controversy' at the time of removal."[4]  *Matheson*, 319

---

[4] The court also notes that defendant has not provided summary-judgment-type evidence of the amount of legal fees incurred by plaintiff since the case was removed to this court. Speculation is insufficient to meet its burden by a preponderance of the evidence.

F.3d at 1090.  Counsel for plaintiff indicates that as of the date of receiving the notice of removal, plaintiff had incurred $2,415 in legal fees in connection with this case.  Dkt. # 27 (2d Adler Decl.) ¶ 4.

Defendant also argues that plaintiff's counsel made an initial settlement offer in the amount of $75,000, which by itself satisfies defendant's burden.  Contrary to plaintiff's assertions, settlement demands are admissible evidence of the amount in controversy.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).  They are not, however, always conclusive evidence.  *Id.* ("A settlement letter is relevant evidence of the amount in controversy *if it appears to reflect a reasonable estimate of the plaintiff's claim.*") (emphasis added).  Settlement demands may reflect a number of strategies.  A plaintiff might demand a lower amount than it believes is owed in order to speed resolution and decrease the costs of litigation.  A plaintiff might demand more than it believes it is owed if it believes that the defendant either overestimates damages or is willing to overpay to reduce risk and litigation cost.  A plaintiff may also make a demand that reflects a sincere assessment of the actual damages owed.  Without more evidence than the demand itself, it is difficult to determine what a settlement demand reveals about the actual amount in controversy.  The court recognizes, of course, that a plaintiff's post-removal declaration as to his damages at the time of removal warrants suspicion, particularly if he expressly seeks to avoid federal court.  Nevertheless, courts have discretion to accept post-removal admissions of evidence of the amount-in-controversy.  *Abrego*, 443 F.3d at 690-91; *see also McDaniel v. Garmin, LTD*, Case No. C12-2243RAJ, Dkt. # 14 at 5-7.

Here, the court has the benefit of damages allegations in the complaint and additional evidence.  The value of the sports memorabilia was explicitly included in the complaint, and has not changed in Mr. Grieff's declaration.  The only post-removal admission submitted under penalty of perjury is the appropriate percentage for calculating the loss of use and loss of appreciation.  Defendant does not dispute that the

1   percentages plaintiff asserts is appropriate.  Accordingly, the court exercises its discretion

2   to accept plaintiff's declaration in calculating the remaining damages not alleged in the

3   complaint.  The court declines to rely solely on the $75,000 settlement demand in a

4   vacuum, and, instead, relies on the evidence submitted under penalty of perjury and

5   plaintiff's consistent allegations in the complaint and declaration regarding the value of

6   the sports memorabilia.[5]

7        On balance, the court finds that defendant has not met its burden to prove, by a

8   preponderance of evidence, that there was more than $75,000 in controversy at the time

9   of removal.[6]

10        For all the foregoing reasons, the court GRANTS plaintiff's motion to remand,

11  and DENIES the remaining motions as MOOT.  The Clerk is DIRECTED to transfer this

12  case to the Superior Court for the State of Washington, King County.

13        Dated this 11th day of June, 2014.

14

15

16

17        The Honorable Richard A. Jones
          United States District Judge

18

19

20

21

---

22        [5] The court also notes that although it appears that plaintiff's counsel initially offered

23  $75,000 to settle all claims, the next day he clarified that the probable value of the damages
     sought were between $40,000 and $50,000.  Dkt. # 20 (Brigandi Jr. Decl.) ¶¶ 5-6; # 27 (2d Adler

24  Decl.) ¶3, Ex. 2.
          [6] Defendant also calculates the value of the "loss of profit" and "return of the

25  merchandise."  However, these values appear to be duplicative of loss of use and the value of the
     goods purchased.  The court notes that even if the court included the additional $1,559 for loss of

26  profit and $7,795 for return of merchandise, the amount in controversy would only reach

27  $59,218.60, and thus, the result would be the same.

ORDER- 8